UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NADEZHDA SHROFF,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

**MEMORANDUM & ORDER**
22-MC-03229 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Petitioner Nadezhda Shroff has filed a motion to expunge the records of an arrest that occurred pursuant to a criminal complaint filed in this District but that did not lead to an indictment or conviction against her. *See* ECF No. 1. Although the Government has not opposed her motion, the Court denies the motion for the reasons set forth below.

## **PROCEDURAL HISTORY**

Petitioner and her husband were arrested in June 2019 pursuant to a criminal complaint, which alleged that they had obtained and used credit cards in the names of fictitious identities, in violation of 18 U.S.C. § 1029(b)(2). *United States v. Epshteyn*, No. 19-mj-570 (E.D.N.Y. filed June 25, 2019) (ECF No. 1).[1] The complaint described numerous specific instances in 2015 and 2016 when Petitioner, separately from her husband, allegedly made transactions using the credit cards tied to those fictitious identities. *Id.* ¶¶ 22–25. In December 2019, the Government moved to dismiss the complaint against Petitioner without prejudice, for reasons not explained in the pre-printed form that the Government used for its motion, and the presiding magistrate judge granted that motion. *Id.* (ECF No. 30). That same month, Petitioner's husband waived his right

---

[1] The criminal complaint identified Petitioner by the last name Epshteyn, which she was using prior to her married name of Shroff, which is the name she used when filing this petition.

to be indicted by a grand jury and pled guilty to a one-count information charging him with access device fraud based on the scheme described in the criminal complaint. *United States v. Shroff*, No. 19-cr-579 (E.D.N.Y. filed June 25, 2019) (ECF Nos. 30, 31). Petitioner's husband was sentenced on December 1, 2022, to one year and one day of imprisonment followed by two years of supervised release. *Id.* (ECF No. 43). In connection with Mr. Shroff's sentencing, his attorney argued that any period of incarceration could result in his deportation to his home country of India, thereby risking his permanent separation from Petitioner, who was unemployed and "reliant on her husband." *Id.* (ECF No. 39).

      Approximately three years after the complaint against her was dismissed, Petitioner filed her motion to expunge all records of her arrest maintained by either this District or the Attorney General. *Shroff v. United States*, No. 22-mc-3229 (E.D.N.Y. filed Oct. 31, 2022) (ECF No. 1-2). Petitioner explains that she previously received the education and training necessary to work as a "Certified Occupational Therapy Assistant," specifically "working with young children with special needs." *Id.* at 1. She further explains that her field is "a small professional community," in which "reputation is of paramount importance" and that the records of her arrest have caused her to fail multiple background checks during job applications in the past few years. *Id.* at 2. Petitioner emphasizes the importance of obtaining employment by explaining that her husband, whom she identifies as "an immigrant from India," still had a "criminal proceeding" pending against him and "is currently in Immigration Court" as a result. *Id.* at 3, 8. Finally, she states that she intends to use whatever money she is able to earn to pay for "costly fertility treatment," which her doctors have advised her to pursue because she "is a 47-year-old female who has been struggling to conceive her first child." *Id.* at 2–3.

However, less than two weeks ago, Petitioner's husband, Cyrus Shroff, filed a *pro se* motion in his criminal case to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A), based on grounds that, if not inconsistent with Petitioner's statements, at least appear to suggest that circumstances have changed in the several months since Petitioner filed her motion. *United States v. Shroff*, No. 19-cr-579 (E.D.N.Y. filed June 25, 2019) (ECF No. 46). Mr. Shroff asserts that he is expecting his second child with a "partner," whom he specifically identifies as having a different name than Petitioner, in August 2023. *Id.* Since his partner has apparently been diagnosed with a brain aneurysm, Petitioner's husband says that he intends to serve as the primary caregiver both for the newborn child and his partner, along with a five-year-old child that he says he and his partner already share. *Id.* at 3–5. Further complicating matters, the attorney who represented Cyrus Shroff prior to sentencing mentioned only that Mr. Shroff and his ex-wife, a third woman, had a daughter attending Rutgers University and submitted a letter that she purportedly wrote in support of her father. *See id.* (ECF No. 41). Mr. Shroff's sentencing submission mentioned nothing about additional children who relied on his care, and Mr. Shroff's *pro se* motion to reduce his sentence mentions nothing about having a college-aged child. *See id.* (ECF Nos. 41, 46).

After Petitioner filed her motion to expunge her arrest records, the Court twice ordered the Government to file a response. The Government did not file any papers related to Petitioner's motion, and an Assistant U.S. Attorney instead contacted the Court's staff confirming that the Government consents to the relief Petitioner seeks and disclaiming any intent to make a written submission.

## **LEGAL STANDARD**

Although no specific federal statute authorizes a district court to seal or expunge arrest records, the Second Circuit has held that "[a] court, sitting in a criminal prosecution, has ancillary jurisdiction to issue protective orders regarding dissemination of arrest records." *United States v. Schnitzer*, 567 F.2d 536, 538 (2d Cir. 1977). The Second Circuit has more recently held that district courts do not have analogous authority to seal or expunge records of federal criminal convictions, but it reiterated the validity of its prior holding in *Schnitzer* when doing so by explaining that the ancillary jurisdiction established in *Schnitzer* is "confined to the expungement of arrest records following a district court's order of dismissal." *Doe v. United States*, 833 F.3d 192, 197 (2d Cir. 2016).

When the Second Circuit initially established district courts' ancillary jurisdiction to expunge arrest records, it emphasized "that the power to expunge is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." *Schnitzer*, 567 F.2d at 539. The Second Circuit further identified several instances in which "[s]uch extreme circumstances ha[d] been found," specifically: (i) "where procedures of mass arrests rendered judicial determination of probable cause impossible"; (ii) "where the court determined the sole purpose of the arrests was to harass civil rights workers"; (iii) "where the police misused the police records to the detriment of the defendant"; and (iv) "where the arrest was proper but was based on a statute later declared unconstitutional." *Id.* at 540. District courts within the Second Circuit have continued to consult these specific examples when deciding whether to expunge arrest records. *See, e.g.*, *United States v. Rodrigue*, No. 81-cr-342, 2023 WL 2043393, at *2 (S.D.N.Y. Feb. 16, 2023) (denying motion to expunge records related to 40-year-old arrest); *Bulla v. United States*, No. 18-mc-299,

4

2021 WL 242149, at *2 (E.D.N.Y. Jan. 25, 2021) (denying motion to expunge records related to 30-year-old arrest).

## DISCUSSION

Petitioner has not demonstrated the extreme circumstances necessary to seal or expunge records related to her arrest. Of the examples identified by the Second Circuit in *Schnitzer*, all of them, except the police's misuse of records, involve circumstances that would undermine the legitimacy of a petitioner's arrest. *Schnitzer*, 567 F.2d at 539. But Petitioner has not provided any information that even attempts to dispel the probable cause related to her arrest, and the detailed list of allegedly fraudulent transactions in the criminal complaint was strongly suggestive of probable cause. *See United States v. Epshteyn*, No. 19-mj-570 (E.D.N.Y. filed June 25, 2019) (ECF No. 1 ¶¶ 22–25). Nor has Petitioner even alleged that the police, federal agents, or anyone else are misusing any records related to her arrest.

Although the Court is sympathetic to Petitioner's failed attempts to obtain employment, adverse employment outcomes are not a basis to expunge arrest records, even if a petitioner works in a heavily-regulated industry. *See Rodrigue*, 2023 WL 2043393, at *1, *3 (denying expungement despite petitioner's "revocation of [his] license to practice medicine in the state of New York," which "forc[ed] [him] to relocate to Florida," where he continued to face the "denial of malpractice insurance" and "almost yearly investigations by all sorts of government agencies"); *Harley v. United States*, No. 22-mc-1736, 2022 WL 4134529, at *1 (E.D.N.Y. Aug. 31, 2022) (denying expungement despite the "burden such a record places on [petitioner's] employment prospects in the criminal justice field"). The fact that Petitioner intends to spend a portion of her income on the noble purpose of raising a child does not change that outcome. Additionally, the potential inconsistencies between the filings made by Petitioner and her

5

husband—such as whether Petitioner's husband relies on her support, or whether he intends to serve as the primary caregiver for a different partner, and the number of children Petitioner's husband is responsible for—counsels against putting too much weight on the unverifiable statements about how Petitioner intends to spend her money.[2]

The Government's decision not to oppose Petitioner's request for relief does not change this outcome.  The Government's dismissal of the complaint against Petitioner did not contain any information that even suggested that Petitioner was innocent or that her arrest lacked probable cause.  *See United States v. Epshteyn*, No. 19-mj-570 (E.D.N.Y. filed June 25, 2019) (ECF No. 29).  Instead, the fact that the Government continued to prosecute Petitioner's husband and obtained a conviction fosters the opposite inference—that the scheme alleged in the complaint did, in fact, occur.  Absent a written statement by the Government indicating that its dismissal of the complaint against Petitioner was based on legal or factual innocence—rather than a discretionary charging decision—the Court does not put any weight on the Government's non-opposition to Petitioner's motion.  *See Peters v. United States*, No. 13-mc-103, 2013 WL 3280880, at *2 (E.D.N.Y. June 27, 2013) (denying expungement but explaining that "[t]he government's express concession of an individual's innocence . . . if coupled with hardship, can warrant the expunging of an arrest record when charges have been dismissed").

---

[2]  The Court understands that there might be an explanation for all of these apparent inconsistencies, especially because Petitioner's motion to expunge her arrest records and Cyrus Shroff's motion to reduce his sentence were filed approximately eight months apart.  For the avoidance of doubt, the Court confirms that it would deny Petitioner's motion to expunge her arrest records even if her representations were entirely accurate at the time she filed her motion.

## **CONCLUSION**

For the reasons set forth above, the Court DENIES Petitioner's motion to expunge records related to her arrest on a criminal complaint previously filed in this District.  ECF No. 1.  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

                                               */s/ Hector Gonzalez*
                                               HECTOR GONZALEZ
                                               United States District Judge

Dated:  Brooklyn, New York
         June 23, 2023